UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION


F.J.M. (XXX-XX-1305)                    CIVIL ACTION NO. 13-cv-0324

VERSUS                                  JUDGE FOOTE

U.S. COMMISSIONER SOCIAL                MAGISTRATE JUDGE HORNSBY
SECURITY ADMINISTRATION


**REPORT AND RECOMMENDATION**

**Introduction**

F.J.M. ("Plaintiff") was born in 1958 and has a bachelors of general studies degree from LSU-S. She has past work experience delivering pizzas and as a home health attendant. She applied for disability benefits based on a claim that she has been unable to work since November 4, 2010 due primarily to the effects of bipolar disorder and pain in her left knee.

ALJ Gerald Meyer held a hearing and issued a written decision in which he found that Plaintiff was not disabled. The Appeals Council denied a request for review. Plaintiff, who is self-represented, filed this civil action to seek judicial review of the decision. For the reasons that follow, it is recommended the decision be reversed and remanded.

**Summary of the ALJ's Decision**

The ALJ analyzed the claim pursuant to the five-step sequential analysis set forth in 20 C.F.R. § 404.1520 (governing claims for disability insurance benefits) and § 416.920 (parallel regulations governing claims for Supplemental Security Income) and described in cases such as Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005). He found that Plaintiff

had not engaged in substantial gainful activity (step one) since November 4, 2010.  He found that Plaintiff suffered from osteoarthritis of the left knee, obesity, and bipolar disorder, impairments that are severe (step two) within the meaning of the regulations, but not so severe as to meet a listed impairment (step three) that would require a finding of disabled without regard to other vocational factors.

The ALJ then assessed the evidence and determined that Plaintiff had the residual functional capacity ("RFC") to perform light work, subject to several exceptions such as the inability to climb ladders, only occasional ability to climb ramps or stairs, and inability to work at unprotected heights or around dangerous moving machinery.  She was also limited to simple one-two-three step procedures that are routine and repetitive without frequent changes in duties; could understand, remember, and carry out only simple instructions; and could have only limited contact with the public.

The ALJ heard testimony from a vocational expert ("VE") regarding Plaintiff's ability to perform certain jobs given her age, education, and RFC.  Based on that testimony he found that Plaintiff could not perform her past relevant work (step four) but could perform other jobs (step five) such as cashier-clerk and ticket seller that exist in significant numbers in the economy.

**Issues on Appeal**

Plaintiff generally challenges the ALJ's assessment of the medical evidence and a report from a physical therapist.  She also challenges the ALJ's assessment of her credibility and various interpretations of or inferences drawn from the evidence.

**Standard of Review; Substantial Evidence**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Analysis**

Plaintiff's testimony began with the ALJ asking her about her medications. A list (Tr. 136) includes Seroquel, Trazodone, and Fluoxetine (all of which were taken to treat bipolar disorder, anxiety, depression, and sleeplessness). The ALJ asked if the medicines caused side effects. Plaintiff said they "cause drowsiness, maybe some dizziness sometimes." She said none of them were "really working to even out my sleep pattern." Tr. 18. She said that, after several years of taking Trazodone to help with her sleep, it stopped working as well so that "some days I don't get to sleep at all, especially if I have something the next day" like a doctor's appointment. Plaintiff said that the little bit of stress the night before an appointment or obligation keeps her from getting to sleep. Tr. 18-19. Plaintiff testified that her physicians had tried several different medications to address sleep disruption, but some

of the medications had really bad side effects.  Tr. 25.  The listed medications indicate that such sleepiness or drowsiness are possible side effects.

After the VE identified jobs he believed Plaintiff could perform, the ALJ allowed Plaintiff to comment.  She began by stating that her mental health would be an issue, "especially if you can't sleep."  She described how she had a job about a year earlier sitting with a patient but she "absolutely could not stay awake" and was fired after a week because she kept falling asleep no matter how hard she tried to stay awake.  Plaintiff concluded with, "right now there's no job that I could hold because I can't control my sleeping and I just can't - - I have trouble leaving the house at all so I am not able to take on a job."  Tr. 28.

The ALJ's decision acknowledged that Plaintiff testified at the hearing that she "has difficulties sleeping."  The ALJ also noted some of Plaintiff's other testimony about her knee problem and being unable to work, but he countered it by noting the non-use of a cane and Plaintiff stopping work as a care giver when her patient passed away rather than reasons related to impairments.  For example, he stated that Plaintiff "does not use a cane because she is embarrassed," which he interpreted to mean her knee problems were not as serious as alleged.  Plaintiff actually testified that she was supposed to be using a cane, and a therapist recommended a walker, because she was a fall risk.  Plaintiff said she was "kind of embarrassed to use it" so instead would usually grab a shopping buggy in the parking lot and use it to make her way to the electric buggy inside the store.  She said that when she visits the library she holds on to desks as she walks, but library employees once had to use a wheelchair to get her to her car.  Tr. 22.  As for Plaintiff stopping work after her patient died,

Plaintiff responds that her MRI for her knee was already scheduled at the time the patient died.

The ALJ made a broad statement that Plaintiff's description of her symptoms and limitations "has generally been inconsistent and unpersuasive," and that her statements about the limiting effects of her symptoms were not credible to the extent that they were inconsistent with the RFC he found.  Tr. 55.  The ALJ did not, however, make a specific finding with respect to the credibility of Plaintiff's repeated testimony that she has serious sleep disruption, stemming from her mental health issues or as side-effects of medication, that have and would interfere with employment.  The ALJ gave some reasons to discount complaints about knee pain, although Plaintiff makes reasonable challenges to those assessments, but he did not give any reason to discount the testimony about sleep-related problems.

The regulations, set forth at 20 C.F.R. § 404.1529 and § 416.929, require consideration of all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.  They also require the Commissioner to consider the "type, dosage, effectiveness, and side effects of any medication [the claimant] take [s] or ha[s] taken to alleviate [the claimant's] pain or other symptoms."  20 C.F.R. § 404.1529(c)(3)(iv); Crowley v. Apfel, 197 F.3d 194, 199 (5th Cir.1999).  The absence of a direct discussion of a claim of drowsiness or other side effect, which could be a significant non-exertional impairment, may deprive the agency decision of substantial evidence to support it and preclude an informed appellate review.  J.F.B. v.

Commissioner, 2013 WL 1152722 (W.D. La.),  adopted, 2013 WL 1152747 (W.D.  La.

2013) (collecting cases and reversing when drowsiness side effect not sufficiently addressed

by ALJ).

When assessing the credibility of a claimant's testimony about a symptom or side

effects, the ALJ must "make a finding about the credibility of the individual's statements

about the symptom(s) and its functional effects."  Social Security Ruling 96-7p.  "It is not

sufficient for the adjudicator to make a single, conclusory statement that 'the individual's

allegations have been considered' or that 'the allegations are (or are not) credible.'" "The

determination or decision must contain specific reasons for the finding on credibility,

supported by the evidence in the case record, and must be sufficiently specific to make clear

to the individual and to any subsequent reviewers the weight the adjudicator gave to the

individual's statements and the reasons for that weight."  Id.

An ALJ need not specifically discuss every factor set forth in the regulations to

withstand judicial review of a credibility assessment regarding a symptom.  See Hillman v.

Barnhart, 2006 WL 690879 (5th Cir. 2006).  And if an ALJ has substantially complied with

the regulations in the assessment of the claimant's credibility, that decision is entitled to

judicial deference.  Johnson v. Bowen, 864 F.2d 340, 347 (5th Cir. 1988); Falco v. Shalala,

27 F.3d 160, 164 (5th Cir. 1994).

The Commissioner did not make a specific evaluation and finding regarding the

credibility of Plaintiff's squarely presented testimony that she experiences serious difficulty

sleeping at night and staying awake at work.  Limitations stemming from such a condition

would almost certainly have a significant effect on the RFC and ability to perform various jobs.  It would exceed the limited role that courts are to play under 42 U.S.C. § 405(g) if the court attempted to now make a de novo  assessment of Plaintiff's credibility about these issues.   A sentence four reversal and remand is warranted based on the lack of a sufficient agency finding with respect to the credibility of the sleep issues testimony.

**Conclusion**

A remand will allow Plaintiff to attempt to retain counsel, which she states she now wishes she had at the hearing.  The Commissioner will be able to specifically address the sleeping difficulties testimony and, if the jobs of ticket seller and cashier II are again proposed, discuss the consistency of finding those jobs available for a person who is able to have only limited contact with the public.  A VE testified in Zuniga v. Astrue, 2009 WL 2488124 (S.D. Tex. 2009) that a person who could have only limited contact with the public could not perform the job of ticket taker or any counter type jobs because they all deal with the public.  Plaintiff did not raise that issue on appeal, and the lack of cross-examination on the issue at the hearing likely bars judicial relief based solely on it.  Carey v. Apfel, 230 F.3d 131 (5th Cir. 2000); Pete v. Astrue, 2009 WL 3648453 (W.D. La. 2009).  The issue is worth noting, though, so that any such conflicts can be fully addressed at the agency level and possibly avoid unnecessary appellate proceedings.

Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that this case be remanded to the Agency for further proceedings.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within seven (7) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 27th day of March, 2014.

Mark L. Hornsby
U.S. Magistrate Judge